UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN DERAFFELE,

                                    Plaintiff,

        v.

CITY OF NEW ROCHELLE, et al.,

                                    Defendants.

Case No. 15-CV-282 (KMK)

OPINION & ORDER

Appearances:

John DeRaffele
New Rochelle, NY
*Pro se Plaintiff*

Steven C. Stern, Esq.
David A. Gold, Esq.
Sokoloff Stern LLP
Carle Place, NY
*Counsel for Defendants City of New Rochelle, Benny Giles, Brian Murphy, Douglas Kelly, Louis Chipper Perone, Charles Strome, Paul Vacca, and Daniel Whittemore*

Michael J. Siudzinski, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants James Generoso and Judge Susan Kettner*

KENNETH M. KARAS, District Judge:

        John DeRaffele ("Plaintiff"), proceeding pro se, filed the instant Complaint pursuant to

42 U.S.C. § 1983, alleging that the City of New Rochelle (the "City"), Benny Giles ("Giles"),

Douglas Kelly ("Kelly"), Brian Murphy ("Murphy"), Louis Chipper Perone ("Perone"), Charles

Strome ("Strome"), Paul Vacca ("Vacca"), Daniel Whittemore ("Whittemore"), James Generoso

("Generoso"), and Judge Susan Kettner ("Judge Kettner") violated his constitutional rights under

the First, Fourth, Fifth, and Fourteenth Amendments.  (Dkt. No. 1.)  Before the Court are two

Motions To Dismiss the Complaint ("Motions"), one on behalf of Generoso and Judge Kettner (collectively, "State Defendants"), and one on behalf of the City, Giles, Kelly, Murphy, Perone, Strome, Vacca, and Whittemore (collectively, "City Defendants").  (Dkt. Nos. 32, 35.)  For the following reasons, the Motions are granted in their entirety.

## I.  Background

### A.  Factual Background

The factual allegations that follow are derived from the Complaint.  While the Court will sometimes refer to Plaintiff's contentions as "alleged," it nonetheless treats them as true for purposes of the instant Motions.

In December 1982, Plaintiff purchased the property at 867 Weaver Street, New Rochelle, New York ("867 Weaver Street").  (Compl. 8 (Dkt. No. 1).)  From December 1982 to November 12, 2010, Plaintiff used his home as a multifamily dwelling.  (*Id.*)[1]

In 2007, a third-party developer purchased property adjacent to 867 Weaver Street in order to build a gated community.  (*Id.* at 6.)  During construction, the developer's contractors used Plaintiff's driveway as a method of ingress and egress to access the property.  (*Id.* at 7.)  Plaintiff sought the help of Vacca, the Assistant Deputy Commissioner of Development for the City, regarding this use and the resulting damage to his property.  (*Id.*)  When "Vacca did

---

[1] Under the City's zoning code, a multifamily dwelling is defined as "[a] building containing three or more dwelling units, or a part of a mixed-use building containing three or more dwelling units on a single building lot."  *See* New Rochelle, N.Y., Zoning Code § 331-4.  The Court is entitled to take judicial notice of this provision, along with other City ordinances and statutes, in resolving the instant Motions.  *See Moore U.S.A. Inc. v. Standard Register Co.*, 139 F. Supp. 2d 348, 363 (W.D.N.Y. 2001) (explaining that a court may take judicial notice of "matters of public record," which include "statutes, case law, city charters, city ordinances, criminal case dispositions, letter decisions of government agencies, published reports, records of administrative agencies, or pleadings in another action"); *see also Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 321 (S.D.N.Y. 2015) ("In considering a motion to dismiss, a court is permitted to take judicial notice of public records . . . .").

nothing for years," Plaintiff then wrote letters to Strome, the City Manager, and the City's Mayor to complain about Vacca's conduct. (*Id.*)[2]

On November 12, 2010, a carbon monoxide alarm was triggered in the unit of one of Plaintiff's tenants at 867 Weaver Street. (*Id.* at 9.) The tenant called the fire department, which responded to the residence, evacuated all the tenants from the building, and corrected the problem. (*Id.*) Vacca arrived on the scene to inspect the premises and "entered . . . Plaintiff's house without permission." (*Id.*) On November 16, 2010, Vacca served Plaintiff with citations for five housing violations. (*Id.* at 10; *see also* Decl. of Steven C. Stern, Esq. ("Stern Decl.") Ex. E, 16–17 (Dkt. No. 36).)[3] These citations, as alleged in the Complaint, "were written . . . simply because . . . Vacca wanted revenge[] against Plaintiff for his complaints against . . . Vacca to the City Manager and Mayor . . . ." (Compl. 11.)

Plaintiff then "began to do his own investigation . . . in order to properly defend himself against the claims by the City . . . ." (*Id.*) During this time, he spoke with various City employees, including Giles, the City Clerk, and Perone, then City Assessor. (*Id.*) Between

---

[2] Plaintiff subsequently sued the developer over the use of his driveway. (Compl. 7.) In taking judicial notice of these public records, *see Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation but rather to establish the fact of such litigation and related filings." (internal quotation marks omitted)), the Court notes that no City or State Defendant was named in the lawsuit or was party to the settlement, (*see generally* Decl. of Steven C. Stern, Esq. ("Stern Decl.") Ex. D (Dkt. No. 36)).

[3] Plaintiff received three citations for violating New Rochelle, N.Y., Zoning Code § 331-11(A), which prohibits buildings from being "erected, constructed, moved, altered, rebuilt, . . . enlarged, . . . used, designed[,] or arranged to be used for any purpose except in conformity with this chapter." (*See* Stern Decl. Ex. C.) He also received two citations for violating New Rochelle, N.Y., Building Construction § 111-8 for failure to obtain building permits. (*See* Stern Decl. Ex. F.)

The Court takes judicial notice not only of these provisions, as noted above, but also of Judge Kettner's eventual decision against Plaintiff for violations of these provisions. *See Moore*, 139 F. Supp. 2d at 363; *Medcalf*, 84 F. Supp. 3d at 321.

November 16, 2010 and approximately January 15, 2011, "Plaintiff could not find any files in the Building Department regarding [867 Weaver Street]." (*Id.*) On or about February 15, 2011, Giles informed Plaintiff "that a file had been found," but, according to Plaintiff, "this file was not for [867 Weaver Street]" and "was created in order to shore up the City's case." (*Id.* at 12.)

In May 2011, the prosecution against Plaintiff for the housing violations proceeded to trial before Judge Kettner in the City Court of New Rochelle (the "City Court"). (*Id.* at 13.) Prior to the start of trial, Murphy, a prosecutor for the City, moved in limine to exclude Plaintiff from arguing that 867 Weaver Street had a pre-existing non-conforming use. (*Id.* at 27.) Judge Kettner granted the City's motion, (*id.*), holding that the proper avenue for challenging the building department's determination would have been to file an appeal with the Board of Appeals on Zoning, *see People v. Deraffele*, 950 N.Y.S.2d 724 (City Ct. 2012). According to Plaintiff, this ruling "was all done as part of the conspiracy to rob [him] of due process . . . ." (Compl. 27.)

The trial itself continued over a period of two and half years, during which various City employees allegedly lied under oath. (*Id.* at 19–26.)[4] Murphy, as the prosecutor in the case, allegedly "orchestrated" these lies, with the help of Judge Kettner, to "keep the truth from coming out." (*Id.* at 26–27.) According to the Complaint, Strome "was complacent and allowed the City employees . . . to form this conspiracy and lie under oath," while Perone refused to testify on Plaintiff's behalf. (*Id.* at 25.)

Having "allowed the witnesses to lie under oath without reprimand and even consider[ing] their perjurous [sic] testimony in her decision," (*id.* at 28), Judge Kettner found Plaintiff guilty of the charges on May 14, 2014, (*id.* at 13). On June 19, 2014, Plaintiff was

---

[4] These City employees include Vacca; Giles; Whittemore, the City Assessor; and Kelly, the former Assistant Fire Chief of the City. (*See* Compl. 19–26.)

sentenced to pay a fine of $12,900, which he paid that day.  (*Id.*)  Plaintiff commenced an appeal

of Judge Kettner's decision immediately thereafter.  (*Id.*)

Generoso, the City Court Clerk, allegedly "refused to send the settled transcript and the

original record to the Appellate Term, thereby "hinder[ing] . . . Plaintiff from filing his [a]ppeal

in a timely manner."  (*Id.* at 26.)  Generoso "finally relented . . . and sent the record to the

Appellate Term on or about January 8, 2015."  (*Id.* at 13–14.)  Plaintiff's appeal is pending as of

the time of this Opinion.  (*Id.* at 10.)

B.  Procedural History

Plaintiff commenced the instant Action on January 15, 2015.  (Dkt. No. 1.)  Pursuant to a

scheduling order adopted by the Court on April 15, 2015, (Dkt. No. 27), State Defendants and

City Defendants filed separate Motions To Dismiss and supporting papers on May 29, 2015,

(Dkt. Nos. 32–37).  Plaintiff filed his opposition papers on June 23, 2015, (Dkt. Nos. 40, 45), and

City Defendants filed their reply on July 13, 2015, (Dkt. No. 44).  By letter dated July 8, 2015,

State Defendants declined to submit a reply.  (Dkt. No. 43.)

II.  Discussion

A.  Standard of Review

"The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject

matter jurisdiction and under 12(b)(6) for failure to state a claim are 'substantively identical.'"

*Gonzalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at *2 (D. Conn.

June 3, 2014) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003)); *see also*

*Neroni v. Coccoma*, No. 13-CV-1340, 2014 WL 2532482, at *4 (N.D.N.Y. June 5, 2014) (same),

*aff'd*, 591 F. App'x 28 (2d Cir. 2015).  "In deciding both types of motions, the Court must accept

all factual allegations in the complaint as true, and draw inferences from those allegations in the

light most favorable to the plaintiff." *Gonzalez*, 2014 WL 2475893, at *2 (internal quotation marks omitted). However, "[o]n a Rule 12(b)(1) motion, . . . the party who invokes the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6)." *Id.*; *see also Sobel v. Prudenti*, 25 F. Supp. 3d 340, 352 (E.D.N.Y. 2014) ("In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." (internal quotation marks omitted)). This difference as to the allocation of the burden of proof is "[t]he only substantive difference" between the standards of review under these two rules. *Fagan v. U.S. Dist. Court for S. Dist. of N.Y.*, 644 F. Supp. 2d 441, 447 n.7 (S.D.N.Y. 2009) (same).

### 1. Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (internal quotation marks omitted). "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010). Nevertheless, "[u]nlike Article III standing, which ordinarily should be determined before reaching the merits, statutory standing may be assumed for the purposes of deciding whether the plaintiff otherwise has a viable cause of action." *Coan v. Kaufman*, 457 F.3d 250, 256 (2d Cir. 2006) (citation omitted). While a district court resolving a motion to dismiss under Rule 12(b)(1) "must take all

6

uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of

the party asserting jurisdiction," "where jurisdictional facts are placed in dispute, the court has

the power and obligation to decide issues of fact by reference to evidence outside the pleadings,

such as affidavits," in which case "the party asserting subject matter jurisdiction has the burden

of proving by a preponderance of the evidence that it exists." *Tandon v. Captain's Cove Marina*

*of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (alteration and internal quotation marks

omitted); *see also Ray Legal Consulting Grp. v. Gray*, 37 F. Supp. 3d 689, 696 (S.D.N.Y. 2014)

("[W]here subject matter jurisdiction is contested a district court is permitted to consider

evidence outside the pleadings, such as affidavits and exhibits.").

### 2.  Rule 12(b)(6)

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration, citation,

and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions

devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted).

Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the

speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated

adequately, it may be supported by showing any set of facts consistent with the allegations in the

complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that

is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from

7

conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In addition, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).  Further, "[f]or the purpose of resolving [a] motion to dismiss, the [c]ourt . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Hendrix v. City of N.Y.*, No. 12-CV-5011, 2013 WL 6835168, at *2 (E.D.N.Y. Dec. 20, 2013) (same).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted); *see also*

*Farzan v. Wells Fargo Bank, N.A.*, No. 12-CV-1217, 2013 WL 6231615, at *12 (S.D.N.Y. Dec. 2, 2013) (same), *aff'd sub nom. Farzan v. Genesis 10*, 619 F. App'x 15 (2d Cir. 2015).  In deciding a motion to dismiss a pro se complaint, it is appropriate to consider certain "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted); *see also Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (noting that a court may consider "factual allegations made by a pro se party in his papers opposing the motion" (italics omitted)).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law."  *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga Cty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

B.  Analysis

Plaintiff alleges that City and State Defendants engaged in a vast conspiracy to deprive him of his constitutional rights under the First, Fourth, Fifth, and Fourteenth Amendments. (Compl. 1.)  Liberally construed, the Complaint sets forth the following claims:

- A violation of Plaintiff's right to petition the government for redress of grievances, as protected by the First Amendment, (*id.* at 14–15; *see also id.* at 17);

- A violation of Plaintiff's Fourth Amendment rights on the basis of an unlawful search and/or illegal entry of his home on November 16, 2010, (*id.* at 15);

- The unlawful taking of Plaintiff's property, in contravention of the Fifth Amendment, when the City "Department of Development allowed [his] driveway to be used by the

adjacent owner as an ingress and egress . . . from 2007 to 2010" and when he was issued the five citations on November 16, 2010, (*id.*; *see also id.* at 17–18);

- "[N]umerous" violations of his due process rights on the basis that "four City employees lied under oath," "the City did not provide the records requested," records were falsified, City employees formed a conspiracy, and Judge Kettner lacked impartiality, refused "to issue the subpoenas requested by . . . Plaintiff in the previous trial," and refused "to grant a mistrial" on the basis that "Vacca[] was lying under oath," (*id.* at 15–16; *see also id.* at 18–19).[5]

Plaintiff seeks $25.4 million in compensatory and punitive damages.  (*Id.* at 34.)

### 1. Ripeness

City Defendants seek dismissal of Plaintiff's takings claim on a number of grounds, including that he failed to exhaust available state remedies.  (*See* City Defs.' Mem. of Law in Supp. of Mot. ("City Defs.' Mem.") 16 (Dkt. No. 37).)  Because "[r]ipeness is a jurisdictional inquiry," and because "the Supreme Court has developed specific ripeness requirements applicable to land use disputes," *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347–48 (2d Cir. 2005), the Court must consider this point at the outset.

A takings claim is not ripe if "a remedy potentially is available under the state constitution's provision."  *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 380 (2d Cir.

---

[5] Throughout the Complaint, Plaintiff makes two isolated references to speedy and jury trial rights.  (*See, e.g.*, 15-16 Compl. (alleging that "Plaintiff's right to due process was violated . . . by not allowing a trial by jury or a speedy trial which . . . Plaintiff was entitled to"); *id.* at 31 ("Plaintiff believes his rights to a speedy trial were violated by [the citations] issued on November 16, 2010.").)  In interpreting Plaintiff's allegations "to raise the strongest arguments that they suggest," *see Sykes*, 723 F.3d at 403, the Court has construed these sporadic assertions as part of his due process claim.  However, given City Defendants' call that "Plaintiff's speedy trial claim . . . be dismissed," (City Defs.' Mem. of Law in Supp. of Mot. ("City Defs.' Mem.") 21 (Dkt. No. 37)), the Court takes a moment to note that Sixth Amendment protections did not apply to Plaintiff's prosecution in the City Court, *see Yu Juan Sheng v. City of N.Y.*, No. 05-CV-1118, 2009 WL 6871132, at *7 (E.D.N.Y. June 26, 2009) (rejecting "the notion that parking ticket hearings are criminal prosecutions and covered under the Sixth Amendment"), *adopted by* 2010 WL 3744428 (E.D.N.Y. Sept. 20, 2010); *cf. Torre v. City of Santa Cruz*, No. 07-CV-2682, 2007 WL 2900485, at *1 (N.D. Cal. Sept. 28, 2007) (holding that "the Sixth Amendment right to a jury trial does not extend to petty offenses").  Thus, Plaintiff cannot state a viable claim under the Sixth Amendment.

1995); *see also Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186,

194 (1985) (explaining that a takings claim is not ripe unless "the government entity charged

with implementing the regulations has reached a final decision" and the plaintiff "[has sought]

compensation through the procedures the [s]tate has provided for doing so").[6]  In particular,

"[b]efore a federal takings claim can be asserted, compensation must first be sought from the

state if it has a 'reasonable, certain[,] and adequate provision for obtaining compensation.'"

*Island Park, LLC v. CSX Transp.*, 559 F.3d 96, 109 (2d Cir. 2009) (some internal quotation

marks omitted) (quoting *Williamson*, 473 U.S. at 194); *see also W.J.F. Realty Corp. v. Town of

Southampton*, 351 F. Supp. 2d 18, 23 (E.D.N.Y. 2004) ("[A] plaintiff cannot bring a [§] 1983

action in federal court until the state denies just compensation.  A claim under [§] 1983 is not

ripe . . . *until that point*." (quoting *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 687 (9th

Cir. 1993))).  The Second Circuit and lower courts in the Second Circuit have long recognized

that New York State has such a provision.  *See, e.g.*, *Kurtz v. Verizon N.Y., Inc.*, 758 F.3d 506,

514 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 1156 (2015); *Qing Dong v. Town of N. Hempstead*,

No. 13-CV-255, 2013 WL 6407724, at *2 (E.D.N.Y. Dec. 9, 2013); *Country View Estates @

Ridge, LLC v. Town of Brookhaven*, 452 F. Supp. 2d 142, 156 (E.D.N.Y. 2006); *cf.* N.Y. Const.

art. I, § 7(a) ("Private property shall not be taken for public use without just compensation.").

---

[6] Though it is somewhat unclear as to the nature of the taking asserted by Plaintiff, the
exact contours of his claim are ultimately immaterial for purposes of this analysis.  Indeed,
"*Williamson* drew no distinction between physical and regulatory takings, and the rationale of
that case, that 'a property owner has not suffered a violation of the Just Compensation Clause
until the owner has unsuccessfully attempted to obtain just compensation through the procedures
provided by the State,' demonstrates that any such distinction would be unjustified."  *Villager
Pond*, 56 F.3d at 380 (citation omitted) (quoting *Williamson*, 473 U.S. at 195).

Assuming for purposes of this analysis that some act by City Defendants effectuated a "taking," the Court nonetheless rejects Plaintiff's Fifth Amendment claim as unripe.[7] The Complaint simply does not plead facts showing that Plaintiff had sought compensation from the state for the alleged taking prior to commencing this Action, as required by *Williamson*. *See Rahl v. N.Y. Tel. Co.*, No. 09-CV-1165, 2010 WL 3338832, at *5 (N.D.N.Y. Aug. 24, 2010) ("[B]ecause [the plaintiff's] complaint does not adequately allege that his takings claim is ripe for adjudication in federal court, the claim is dismissed."); *Vaizburd v. United States*, 90 F. Supp. 2d 210, 217 (E.D.N.Y. 2000) (dismissing takings claim as unripe where pro se plaintiffs failed to allege that they sought and were denied adequate compensation from the state). Indeed, Plaintiff, in his opposition papers, suggests quite the opposite, as he asserts that he "did not resolve the takings claim against the violation of [his] civil rights under the Fifth Amendment[,] . . . which he is addressing at this time and before this Court." (Pl.'s Opp'n to City Defs.' Mot. ("Pl.'s Opp'n to City Defs.") 43 (Dkt. No. 45).) Accordingly, Plaintiff's Fifth Amendment claim must be dismissed.

### 2. *Rooker-Feldman*

City and State Defendants argue that either some or all of Plaintiff's claims are barred by the *Rooker-Feldman* doctrine. (*See* City Defs.' Mem. 12–13; State Defs.' Mem. of Law in Supp. of Mot. ("State Defs.' Mem.") 8–9 (Dkt. No. 34).)[8] "Under the *Rooker-Feldman* doctrine,

---

[7] In his opposition papers, Plaintiff alleges that "the City did nothing to alleviate the conditions created by the developer in doing damage to . . . Plaintiff's [property]." (Pl.'s Opp'n to City Defs.' Mot. ("Pl.'s Opp'n to City Defs.") 5 (Dkt. No. 45).) It bears noting that this bare assertion falls short of stating any constitutional claim, let alone a takings claim.

[8] State Defendants argue that the Court lacks subject matter jurisdiction under *Rooker-Feldman* as to all of Plaintiff's claims. (*See* State Defs.' Mem. 9 ("[P]laintiff's [C]omplaint should be dismissed on *Rooker-Feldman* grounds.").) Less clear is City Defendants' position. City Defendants argue that *Rooker-Feldman* deprives this Court of jurisdiction over the "claims that emanate from the City Court judgment . . . ." (City Defs.' Mem. 13.) The Court nonetheless

federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Phillips ex rel. Green v. City of N.Y.*, 453 F. Supp. 2d 690, 712 (S.D.N.Y. 2006) (internal quotation marks omitted).  In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), the Supreme Court emphasized that the doctrine is "narrow" and only applies to federal lawsuits brought by "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Id.* at 284.  After *Exxon Mobil*, the Second Circuit reexamined *Rooker-Feldman* and laid out four conditions that, if met, require a court to dismiss a plaintiff's claims for lack of subject matter jurisdiction:  (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state-court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced."  *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (alterations and internal quotation marks omitted); *see also Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (same).  "The Second Circuit has classified the first and fourth requirements as 'procedural' and the second and third as 'substantive.'"  *Done v. Wells Fargo, N.A.*, No. 12-CV-4296, 2013 WL 3785627, at *6 (E.D.N.Y. July 18, 2013) (citing *Hoblock*, 422 F.3d at 85).

### a.  Procedural Requirements

Here, the two procedural requirements of the *Rooker-Feldman* doctrine are satisfied.

First, as conceded by Plaintiff, a judgment was entered *against* him in the City Court on May 14,

---

analyzes this issue with respect to all Plaintiff's remaining claims, including those that precede Judge Kettner's decision, because "[w]ithout jurisdiction the [C]ourt cannot proceed at all . . . ." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (internal quotation marks omitted).

2014, and he was sentenced on June 19, 2014.  (Compl. 13.)[9]  Second, Plaintiff commenced this

Action on January 15, 2015, (*see* Dkt. No. 1), seven months after the state-court judgment was

entered.[10]  Thus, Plaintiff "lost in state court," and the state-court judgment was "rendered before

the district court proceedings commenced."  *Hoblock*, 422 F.3d at 85 (internal quotation marks

omitted).

### b.  Substantive Requirements

If the Complaint merely "complain[s] of injuries" caused by the state-court judgment and

seeks this Court's "review and rejection of" that judgment, then Plaintiff's claims satisfy the

---

[9] The City Court is part of the New York State Unified Court System.  *See* N.Y. Const. art. VI, § 1(a).

[10] Some Circuit Courts have found the *Rooker-Feldman* doctrine inapplicable unless all state proceedings—including appeals—have ended before the federal action commences.  *See Nicholson v. Shafe*, 558 F.3d 1266, 1276 (11th Cir. 2009) ("[B]ecause an appeal remained pending in the state court action at the time the [a]ppellants filed the instant [federal] case, the state court proceedings had not ended for purposes of *Rooker-Feldman* . . . ."); *Guttman v. G.T.S. Khalsa*, 446 F.3d 1027, 1032 (10th Cir. 2006) ("In this case, [the plaintiff] filed his federal suit while his petition for certiorari to the [state court of appeals] was pending.  His state suit was not final.  As such, the *Rooker-Feldman* doctrine does not bar his federal suit . . . ."); *Dornheim v. Sholes*, 430 F.3d 919, 923–24 (8th Cir. 2005) (deciding that *Rooker-Feldman* did not divest the federal court of jurisdiction because "[a]t the time that the [plaintiffs] commenced this federal action, the state court adjudication was not complete," given that state appellate proceedings took place after the filing of the federal action).  Though the Second Circuit has not yet addressed the issue, district courts within the Second Circuit have not confined application of the *Rooker-Feldman* doctrine to situations where federal plaintiffs have exhausted their state-court appeals. *See, e.g.*, *Davis v. Abrams*, No. 13-CV-1405, 2014 WL 279807, at \*5 n.4 (E.D.N.Y. Jan. 23, 2014); *Liberty Square Realty Corp. v. Boricua Vill. Hous. Dev. Fund Co.*, No. 12-CV-1395, 2012 WL 3191963, at \*3 n.3 (S.D.N.Y. Aug. 7, 2012); *Ward v. Bankers Trust Co. of Cali.*, No. 09-CV-1943, 2011 WL 1322205, at \*5 n.3 (E.D.N.Y. Mar. 29, 2011); *Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, 701 F. Supp. 2d 340, 346–48 (E.D.N.Y. 2010).  The Court concurs with these decisions, for the purpose of *Rooker-Feldman* "would be undermined if the doctrine is inapplicable simply because a litigant happens to be seeking state appellate review of a state-court judgment, while also seeking federal district court review of that judgment. Regardless of the status of any state court appeals, the litigant is still seeking federal review of a state-court judgment."  *Caldwell*, 701 F. Supp. 2d at 348; *see also Davis*, 2014 WL 279807, at \*5 n.4 ("A rule preventing the application of *Rooker-Feldman* until all appeals become final would allow a state court litigant to avoid *Rooker-Feldman* simply by filing the federal action while the state appeal is underway." (internal quotation marks omitted)).

substantive requirements of *Rooker-Feldman*, and this Court would lack subject matter jurisdiction over them.  *Hoblock*, 422 F.3d at 85 (internal quotation marks omitted); *see also Scott v. Capital One, Nat'l Assocs.*, No. 12-CV-183, 2013 WL 1655992, at *3 (S.D.N.Y. Apr. 17, 2013) (same).  That, however, is not the case here.

For one, Plaintiff's Fourth Amendment claim, stemming from the incident on November 12, 2010, "existed in its exact form prior to the state-court judgment" in May 2014.  *McKithen v. Brown*, 481 F.3d 89, 98 (2d Cir. 2007).  As such, the complained-of injury "could not have been 'caused by' those proceedings" that occurred years later.  *Id.*; *see also Beard v. Town of Monroe*, No. 13-CV-1714, 2014 WL 4678038, at *4 (D. Conn. Sept. 18, 2014) (explaining that "*Rooker-Feldman* does not apply to injuries that have been merely 'ratified' rather than 'produced' by a state court judgment" (citing *Hoblock*, 422 F.3d at 88)).  The same is true for Plaintiff's Fourteenth Amendment claims, as his various allegations rest on conduct by City and State Defendants in connection with the prosecution *leading up to* Judge Kettner's decision.  Given this chronology and the substance of the allegations, it is evident that the Complaint seeks not to undo the state-court proceeding but rather to obtain redress for alleged Fourth and Fourteenth Amendment deprivations that occurred before and during Plaintiff's trial.  (*See* Compl. 29–34.)

As to any allegations regarding Plaintiff's right to petition subsequent to Judge Kettner's decision, such an injury would be "*independent of* [that] adverse state court decision," *Scott*, 2013 WL 1655992, at *3 (explaining that *Rooker-Feldman* "only precludes claims brought in federal court where the state decision is *itself* the source of the injury complained of," but not claims based on "an injury *independent of* an adverse state court decision"); *see also Hoblock*, 422 F.3d at 86 ("'[I]ndependent claims' . . . are outside *Rooker-Feldman*'s compass even if they involve the identical subject matter and parties as previous state-court suits." (quoting *Exxon*

*Mobil*, 544 U.S. at 293)), as Plaintiff complains that Generoso interfered with the filing of his appeal *after* Judge Kettner rendered her decision, (*see* Compl. 13–14, 26).[11]  Thus, the Court need not "review" the state court judgment to determine whether City or State Defendants violated Plaintiff's right to petition, because this determination is based not on the merits of Judge Kettner's decision, but whether the state abridged his "rights to complain to public officials and to seek administrative and judicial relief."  *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 701 F. Supp. 2d 568, 593 (S.D.N.Y. 2010) (internal quotation marks omitted). Indeed, the Complaint does not request "overturning or modifying that state court judgment," *see McKnight v. Middleton*, 699 F. Supp. 2d 507, 515 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x 32 (2d Cir. 2011), but rather seeks compensatory and punitive damages for that and other alleged constitutional violations, (*see* Compl. 34).

For these reasons, the Court finds Plaintiff's First, Fourth, and Fourteenth Amendment claims are not barred by *Rooker-Feldman*.

### 3.  Statute of Limitations

City Defendants also argue that Plaintiff's § 1983 claims are barred by the statute of limitations.  (*See* City Defs.' Mem. 6–8.)  Although "[t]he lapse of a limitations period is an affirmative defense that a defendant must plead and prove," a statute of limitations defense may be "raise[d] . . . in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint."  *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008); *see also Zhongwei Zhou v. Wu*, No. 14-CV-1775, 2015 WL 925962, at *3 (S.D.N.Y. Mar. 3, 2015)

---

[11] To the extent Plaintiff alleges that City or State Defendants violated his First Amendment rights prior to the commencement of his trial before the City Court, (*see, e.g.*, Compl. 17 (alleging that his "First Amendment rights were violated . . .  when [City Defendants] lied, created files, omitted files, refused to provide files to . . . Plaintiff during his trial")), such claims would be barred, as relating to events that precede the state-court judgment, *see McKithen*, 481 F.3d at 98.

(same); *Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 209 (S.D.N.Y.

2014) ("Because the defendants bear the burden of establishing the expiration of the statute of

limitations as an affirmative defense, a pre-answer motion to dismiss on this ground may be

granted only if it is clear on the face of the complaint that the statute of limitations has run."

(alteration and internal quotation marks omitted)).

When a plaintiff brings an action under § 1983, "courts apply the statute of limitations for

personal injury actions under state law." *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013);

*see also Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997) ("In [§] 1983 actions, the applicable

limitations period is found in the 'general or residual [state] statute [of limitations] for personal

injury actions.'" (second and third alterations in original) (quoting *Owens v. Okure*, 488 U.S.

235, 249–50 (1989)).  The statute of limitations for personal injury actions in New York is three

years.  *See Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002); *see also* N.Y. C.P.L.R.

§ 214(5).  "Section 1983 actions filed in New York are therefore subject to a three-year statute of

limitations."  *Hogan*, 738 F.3d at 517 (citing, inter alia, *Pearl*, 296 F.3d at 79); *see also Staten v.*

*Vill. of Monticello*, No. 14-CV-4766, 2015 WL 6473041, at *5 (S.D.N.Y. Oct. 26, 2015)

(same).[12]  Federal law determines when a § 1983 cause of action accrues, and the Second Circuit

---

[12] To the extent Plaintiff argues that a six-year statute of limitations applies to his claims, (*see* Pl.'s Opp'n to City Defs. 21–22), that argument is without merit.  The Complaint expressly pleads causes of action for *constitutional* violations, (*see* Compl. 29–34), such that the three-year statute of limitations for § 1983 suits applies in this Action.  Plaintiff's opposition papers offer no basis to apply the statute of limitations for fraud, and, even construed liberally, the Complaint could not state a claim for fraud, as Plaintiff's allegations fall well below the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  *See Scalpi v. Town of E. Fishkill*, No. 14-CV-2126, 2016 WL 831956, at *5 (S.D.N.Y. Feb. 29, 2016) ("Under Rule 9(b), a party alleging fraud must state with particularity the circumstances constituting fraud." (internal quotation marks omitted)); *cf. Meserole v. Sony Corp. of Am., Inc.*, No. 08-CV-8987, 2009 WL 1403933, at *3 (S.D.N.Y. May 19, 2009) (explaining that Rule 9(b) applies "not only to formal averments of fraud, but also to allegations that sound in fraud, or where the wording and imputations of the complaint are classically associated with fraud" (internal quotation marks omitted)), *reconsideration denied*, 2009 WL 2001451 (S.D.N.Y. July 9, 2009).

has ruled that "accrual occurs when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Pearl*, 296 F.3d at 80 (internal quotation marks omitted); *see also Rankel v. Town of Somers*, 999 F. Supp. 2d 527, 539 (S.D.N.Y. 2014) (same). Accrual does not wait "until the [plaintiff] has received judicial verification that the defendants' acts were wrongful." *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1994).

As alleged in the Complaint, Plaintiff's right-to-petition claim arguably rests on City and State Defendants' conduct from the issuance of the citations through his trial appeal of Judge Kettner's decision. (Compl. 13–15, 17, 26, 33.)[13] Considering that the municipal court proceedings did not conclude until May 14, 2014, and Plaintiff filed his appeal on January 12, 2015, (*see id.* at 13), the Court cannot find this cause of action untimely.[14] Similarly, it is not clear on the face of the Complaint that Plaintiff's Fourteenth Amendment claims, which stem from an array of factual allegations pertaining to his trial, are time-barred. (*See, e.g.*, *id.* at 2 (alleging his "right to due process under the Fourteenth Amendment" was violated during his

---

[13] City Defendants seem to concede as much, understanding Plaintiff's right-to-petition claim to stem from "[D]efendants' conduct with respect to the citations, providing him with files prior to his trial, and in connection with the trial." (City Defs.' Mem. 19 (citing Compl. 14, 17, 33).) *Cf. Hampton Bays Connections, Inc. v. Duffy*, 127 F. Supp. 2d 364, 373 (E.D.N.Y. 2001) ("[T]he right to petition government for redress of grievances is broader than the right of access to the 'courts or other similar judicial forums.'" (quoting *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988))). Indeed, in arguing that Plaintiff's First Amendment claims are time-barred, City Defendants discuss the issuance of citations but make no reference to Plaintiff's right to petition the government for redress of grievances. (*See generally* City Defs.' Mem. 6–8.)

[14] On the other hand, to the extent Plaintiff seeks to put forth a First Amendment retaliatory prosecution claim, (*see, e.g.*, Compl. 11 (alleging the citations "were written . . . simply because . . . Vacca wanted revenge[] against Plaintiff for his complaints against . . . Vacca")), such a cause of action would have accrued on November 16, 2010 when the citations were issued, *see Smith v. Campbell*, 782 F.3d 93, 99 (2d Cir. 2015) (affirming that "the retaliatory prosecution claim accrued when [the defendant] delivered to [the plaintiff] the three traffic tickets"); *Turner v. Boyle*, 116 F. Supp. 3d 58, 83–84 (D. Conn. 2015) (noting that "a claim for . . . First Amendment retaliation[] accrues at the time that the allegedly wrongful conduct took place"). Thus, that claim would have expired three years later on November 16, 2013, long before the commencement of the instant Action.

trial); *id.* at 19 ("Plaintiff's right to due process was negated by the actions of . . . Defendants [during the municipal court proceedings].").)  The Court, therefore, will not dismiss Plaintiff's right-to-petition or due process claims under the statute of limitations.  *See Harris v. City of N.Y.*, 186 F.3d 243, 250 (2d Cir. 1999) ("[D]ismissal [for failure to state a claim based on a statute of limitations defense] is appropriate only if a complaint clearly shows the claim is out of time."); *Ashley v. Eastchester Police Dep't*, No. 10-CV-7952, 2012 WL 234399, at *2 (S.D.N.Y. Jan. 6, 2012) ("On a Rule 12(b)(6) motion, the [c]ourt may only dismiss an action based on the statute of limitations if, on the face of the complaint, it is clear that the claim is untimely.").

By contrast, Plaintiff's Fourth Amendment claim clearly accrued on November 12, 2010, (*see* Compl. 9 (alleging that Vacca "entered . . . Plaintiff's house without permission" on November 12, 2010)), the date on which the allegedly illegal search and entry occurred, *see McClanahan v. Kelly*, No. 12-CV-5326, 2014 WL 1317612, at *4 (S.D.N.Y. Mar. 31, 2014) ("An unlawful search claim accrues at the time of the search."); *Rankel*, 999 F. Supp. 2d at 539–40 (holding that a § 1983 claim for illegal entry onto the plaintiff's property accrued on the date of the defendant's entry onto the property).[15]  As Plaintiff did not file his Complaint until January 15, 2015, more than four years after his Fourth Amendment claim accrued, this cause of action is time-barred unless there is a basis for tolling of the statute of limitations.

The tolling of the statute of limitations as applied to § 1983 actions is generally governed by state tolling provisions, *see Moses v. Westchester Cty. Dep't of Corr.*, 951 F. Supp. 2d 448,

---

[15] Because Plaintiff himself acknowledges that he was present at the time of the search and entry, (*see* Compl. 9), it is clear that on November 12, 2010 he knew "of the injur[ies] which [are] the basis of his [A]ction," *Pearl*, 296 F.3d at 80 (internal quotation marks omitted); *accord Hueber v. McCune*, No. 14-CV-49, 2014 WL 2047763, at *4 (W.D.N.Y. May 19, 2014) ("In the context of an allegedly illegal entry into an individual's home, the plaintiff's claim accrues when the plaintiff knows or should have known that the entry occurred."), *aff'd*, 589 F. App'x 9 (2d Cir. 2014).

454 (S.D.N.Y. 2013), but courts may apply the federal equitable tolling standard "as a matter of fairness," *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996) (internal quotation marks omitted). Here, Plaintiff does not allege any basis for tolling the statute of limitations under New York law, and the Court can discern no reason to do so. Although not raised by Plaintiff explicitly, given "the special solicitude that is appropriately accorded to pro se litigants," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) (italics and internal quotation marks omitted), the Court has also considered whether the doctrine of equitable tolling applies to his Fourth Amendment claim.

Under federal law, equitable tolling of the statute of limitations is applied "only in 'rare and exceptional circumstances,' where . . . 'extraordinary circumstances' prevented a party from timely performing a required act, and the party 'acted with reasonable diligence throughout the period he [sought] to toll.'" *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005) (second alteration in original) (quoting *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004)); *see also Moses*, 951 F. Supp. 2d at 454 ("[C]ourts in th[e] [Second] Circuit deciding [§] 1983 claims have applied the federal equitable tolling standard, which allows tolling where extraordinary circumstances prevented a party from timely performing a required act." (internal quotation marks omitted)). Among these circumstances are "[f]raudulent or deceptive acts on the part of the defendants . . . , but only to the extent that the fraud concealed the existence of [the] plaintiff's cause of action and only for as long as the fraud or deception actually prevented the plaintiff from knowing or having reason to know that he has been injured." *Verdon v. Consol. Rail Corp.*, 828 F. Supp. 1129, 1140 (S.D.N.Y. 1993). Plaintiff does not allege any such facts and, to the contrary, suggests that he knew of the purported violations at the time they occurred. (*See, e.g.*, Compl. 9; *id.* at 19–20.) Accordingly, the Court dismisses Plaintiff's Fourth

20

Amendment claim as barred by the statute of limitations.  *See Boos v. Runyon*, 201 F.3d 178, 185

(2d Cir. 2000) (explaining that a plaintiff bears "[t]he burden of demonstrating the

appropriateness of equitable tolling"); *Boyd v. J.E. Robert Co.*, No. 05-CV-2455, 2010 WL

5772892, at *7 (E.D.N.Y. Mar. 31, 2010) ("To benefit from equitable tolling, a litigant must

allege that extraordinary circumstances prevented him from acting in a timely manner." (internal

quotation marks omitted)), *adopted by* 2011 WL 477547 (E.D.N.Y. Feb. 2, 2011).

### 4.  Immunity

City and State Defendants contend that Giles, Kelly, Murphy, Perone, Strome, Vacca,

Whittemore, Generoso, and Judge Kettner are entitled to dismissal on various immunity grounds.

(*See* City Defs.' Mem. 8–12; State Defs.' Mem. 5–8.)[16]

### a.  Absolute Prosecutorial Immunity

Specifically, City Defendants move to dismiss Plaintiff's claims against Murphy as

barred by prosecutorial immunity.  (*See* City Defs.' Mem. 8–9.)  It is well established that

prosecutors are entitled to absolute immunity from damages suits under § 1983 when

"function[ing] as advocates for the state in circumstances intimately associated with the judicial

phase of the criminal process."  *Bernard v. Cty. of Suffolk*, 356 F.3d 495, 502 (2d Cir. 2004)

(internal quotation marks omitted); *see also Hill v. City of N.Y.*, 45 F.3d 653, 661 (2d Cir. 1995)

("Prosecutorial immunity from § 1983 liability is broadly defined, covering virtually all acts,

regardless of motivation, associated with [the prosecutor's] function as an advocate." (internal

quotation marks omitted)).  A prosecutor's entitlement to absolute immunity turns on "the

---

[16] Plaintiff argues "that these individuals should not be granted immunity until [he] has
his day in [c]ourt."  (Pl.'s Opp'n to State Defs.' Mot. ("Pl's Opp'n to State Defs.") 15 (Dkt. No.
40).)  This attempts to put the cart before the horse, however, for immunity is a "threshold
question" that a "district court should resolve . . . before permitting discovery."  *Crawford-El v.
Britton*, 523 U.S. 574, 598 (1998).

capacity in which the prosecutor acts at the time of the alleged misconduct," *Zahrey v. Coffey*, 221 F.3d 342, 346 (2d Cir. 2000), and courts must apply "a functional approach, which looks to the nature of the function performed [by the prosecutor]" to determine whether particular conduct is entitled to absolute immunity, *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (citation and internal quotation marks omitted); *see also Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009) ("To decide whether absolute immunity attaches to a particular kind of prosecutorial activity, one must take account of the 'functional' considerations . . . ."). Notably, "the initiation and pursuit of a criminal prosecution are quintessential prosecutorial functions." *Shmueli v. City of N.Y.*, 424 F.3d 231, 237 (2d Cir. 2005) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)); *see also Norton v. Town of Islip*, 97 F. Supp. 3d 241, 256 (E.D.N.Y. 2015) (finding assistant town attorneys enjoyed absolute prosecutorial immunity in context of civil case), *reconsideration denied*, No. 12-CV-4463, 2016 WL 264930 (E.D.N.Y. Jan. 21, 2016).

The Complaint's allegations against Murphy derive exclusively from the initiation and pursuit of Plaintiff's prosecution, including pre-trial motion practice, objections during the trial, and presentation of witnesses and evidence. (*See* Compl. 18–19, 26–27, 33.) As based on "quintessential prosecutorial functions," Plaintiff's claims are foreclosed by absolute prosecutorial immunity, regardless of the alleged illegality of Murphy's activities. *See Peay v. Ajello*, 470 F.3d 65, 67–68 (2d Cir. 2006) (conferring absolute immunity on prosecutor who allegedly conspired to present false evidence at trial); *Shmueli*, 424 F.3d at 237 ("A prosecutor is . . . entitled to absolute immunity despite allegations of his 'knowing use of perjured testimony' and the 'deliberate withholding of exculpatory information.'" (quoting *Imbler*, 424 U.S. at 431 n.34)); *Deskovic v. City of Peekskill*, No. 07-CV-8150, 2009 WL 2475001, at *15 (S.D.N.Y. Aug. 13, 2009) (finding the prosecutor "absolutely immune for allegedly procuring

22

false scientific evidence . . . and then presenting it at trial").[17]  "In fact, it is seminal law that '[a] prosecutor is . . . entitled to absolute immunity despite the allegations of his knowing use of perjured testimony and the deliberate withholding of exculpatory information.'"  *Aretakis v. Durivage*, No. 07-CV-1273, 2009 WL 249781, at *16 (N.D.N.Y. Feb. 3, 2009) (first alteration in original) (quoting *Shmueli*, 424 F.3d at 237), *reconsideration denied*, 2009 WL 2567781 (N.D.N.Y. Aug. 17, 2009).  The Court, therefore, dismisses all causes of action against Murphy.

### b.  Absolute Testimonial Immunity

In addition, City Defendants argue that Vacca, Kelly, Whittemore, Perone, and Giles are entitled to absolute immunity for all claims arising from their testimony during Plaintiff's trial before the City Court.  (*See* City Defs.' Mem. 9–10.)[18]  The Supreme Court has held that trial witnesses, including government officials, have absolute immunity with respect to any § 1983 claims arising from that testimony, even if it is alleged that such testimony was perjured.  *See*

---

[17] Notably, absolute immunity is "not affected by allegations that improperly motivated prosecutions were commenced or continued pursuant to a conspiracy."  *Shmueli*, 424 F.3d at 237–38; *see also Pinaud v. Cty. of Suffolk*, 52 F.3d 1139, 1148 (2d Cir. 1995) ("[W]hen the underlying activity at issue is covered by absolute immunity, the plaintiff derives no benefit from alleging a conspiracy." (internal quotation marks omitted)).  Indeed, "once a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused."  *Bernard*, 356 F.3d at 503.

While "a prosecutor may lose absolute immunity even for acts performed in his role as an advocate if the prosecutor acts in the 'clear absence of all jurisdiction' or 'without any colorable claim of authority,'" *Anilao v. Spota*, 774 F. Supp. 2d 457, 478 (E.D.N.Y. 2011) (quoting *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987)), Plaintiff's allegations fall far short of that threshold.  He alleges that "Murphy . . . was not acting as a [p]rosecutor but as a conspirator," (Pl.'s Opp'n to City Defs. 25), but "[c]onclusory allegations that [the] defendants went beyond the scope of their jurisdiction, without authority of law[,] are insufficient to withstand a motion to dismiss," *Bender v. City of N.Y.*, No. 09-CV-3286, 2011 WL 4344203, at *7 (S.D.N.Y. Sept. 14, 2011) (internal quotation marks omitted).

[18] Despite City Defendants' assertion to the contrary, Perone is not entitled to testimonial immunity because, according to the Complaint, he did not actually testify.  (*See* Compl. at 25–26.)

*Briscoe v. LaHue*, 460 U.S. 325, 335–36 (1983) (affirming dismissal of § 1983 claims arising from police officers' perjured testimony during trial). "The rationale behind this rule of absolute immunity is that potential civil liability is not needed to deter false testimony before the grand jury or at trial because other sanctions—such as a prosecution for perjury, which is a serious criminal offense—provide a sufficient deterrent." *See Matthews v. City of N.Y.*, 889 F. Supp. 2d 418, 439 (E.D.N.Y. 2012) (citing *Rehberg v. Paulk*, 132 S. Ct. 1497, 1505 (2012)).

Notwithstanding Plaintiff's allegations of falsified testimony, Vacca, Kelly, Whittemore, and Giles are entitled to absolute immunity from liability for the testimony provided at Plaintiff's trial. *See Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (holding that the plaintiff's due process claim was barred because the defendant, as a witness, was absolutely immune from liability for the evidence he furnished in the proceeding at issue); *Anilao v. Spota*, 774 F. Supp. 2d 457, 506 (E.D.N.Y. 2011) (noting that "an allegation that the . . . defendants gave perjured testimony would not be sufficient to render the . . . defendants liable under § 1983"); *Aretakis*, 2009 WL 249781, at *16 (holding that a defendant "who . . . has been accused of rendering perjurious testimony[] is cloaked by absolute immunity for his testimony"). Indeed, Plaintiff's *only* claims against Giles, Whittemore, and Kelly relate to their testimony, (*see* Compl. 22–23 (alleging Giles lied under oath and recanted on cross-examination); *id.* at 23–24 (alleging "Whittemore lied under oath"); *id.* at 24–25 (alleging Kelly lied on the stand during the trial)), such that all causes of action against them are barred by absolute immunity.[19]  For the same

---

[19] In his opposition papers, Plaintiff seeks to overcome this bar by arguing that his "claims against Giles, Whittemore, and Perone" include that they "collaborated with the other Defendants to lie and to ensure a foundation was made for the [City's] case against Plaintiff in [City] Court." (Pl.'s Opp'n to City Defs. 25.)  However, because "a trial witness has absolute immunity with respect to *any* claim based on the witness' testimony," *Rehberg*, 132 S. Ct. at 1505; *see also Horvath v. City of N.Y.*, No. 12-CV-6005, 2015 WL 1757759, at *7 (E.D.N.Y. Apr. 17, 2015) ("[T]estimonial immunity extends to 'preparatory activity, such as a preliminary

reason, Vacca is immune from, and entitled to dismissal of, any claims based on "the various

days of testimony" in which he allegedly "lied and recanted multiple times . . . ."  (*Id.* at 22; *see*

*generally id.* at 19–22.)[20]

### c.  Eleventh Amendment and Judicial Immunity

State Defendants contend that the Eleventh Amendment bars Plaintiff's claims against

Generoso and Judge Kettner.  (*See* State Defs.' Mem. 5–6.)  "[A]s a general matter, states enjoy

sovereign immunity from suit in federal court, even if the claim arises under federal law."

*Harrison v. New York*, 95 F. Supp. 3d 293, 314 (E.D.N.Y. 2015) (internal quotation marks

omitted); *see also* U.S. Const. amend. XI.[21]  "The immunity recognized by the Eleventh

Amendment extends beyond the states themselves to state agents and state instrumentalities that

are, effectively, arms of a state."  *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466

F.3d 232, 236 (2d Cir. 2006) (internal quotation marks omitted).  Thus, under the doctrine of

sovereign immunity, an individual may not sue a state, its agencies, or its officials in federal

court, absent that state's consent or an express statutory waiver of immunity.  *See Coll. Sav.*

*Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999).

Neither of those two exceptions applies here.  It is well settled that in passing § 1983,

Congress did not abrogate the states' immunity under the Eleventh Amendment.  *See Will v.*

*Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) ("Congress, in passing § 1983, had no

intention to disturb the States' Eleventh Amendment immunity. . . .");  *Mateo v. Fischer*, 682 F.

---

discussion in which the witness relates the substance of his intended testimony' to the
prosecutor." (quoting *Rehberg*, 132 S. Ct. at 1507)), Plaintiff's challenge proves unavailing.

[20] As discussed above, Plaintiff's claim against Vacca for unlawful search and/or entry is
barred by the statute of limitations.

[21] "The Judicial power of the United States shall not be construed to extend to any suit in
law or equity, commenced or prosecuted against one of the United States by Citizens of another
State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.

Supp. 2d 423, 429 (S.D.N.Y. 2010) (noting that the Eleventh Amendment bars federal lawsuits seeking damages under § 1983 against state entities). Likewise, New York State has not consented to suit in federal court. *See Harrison*, 95 F. Supp. 3d at 314 ("It is well established that New York State has not waived its sovereign immunity from [§] 1983 claims." (internal quotation marks omitted)); *Bryant v. N.Y. State Dep't of Corr. Servs. Albany*, 146 F. Supp. 2d 422, 425 (S.D.N.Y. 2001) (noting it is "beyond dispute" that New York and its agencies have not consented to being sued in federal court (internal quotation marks omitted)).

The face of the Complaint makes clear that Plaintiff has sued Generoso and Judge Kettner for acts taken in their official capacities as members of the City Court, (*see* Compl. 26, 28, 30–34), which is part of the New York State Unified Court System, *see* N.Y. Const. art. VI, § 1(a).[22] Because "the New York State Unified Court System is unquestionably an 'arm of the State,'" *Gollomp v. Spitzer*, 568 F.3d 355, 368 (2d Cir. 2009) (quoting *Woods*, 466 F.3d at 236), State Defendants are entitled to Eleventh Amendment immunity, *see Caldwell v. James*, No. 14-CV-5384, 2015 WL 427980, at *3 (E.D.N.Y. Jan. 30, 2015) (finding claims against state officers, including court clerks, "clearly barred by the Eleventh Amendment"); *N.Y. State Court Clerks Ass'n v. Unified Court Sys.*, 25 F. Supp. 3d 459, 467 (S.D.N.Y. 2014) ("[T]he doctrine of sovereign immunity enshrined in the Eleventh []Amendment bars [the plaintiffs'] claims against the [s]tate [j]udges for damages and for retrospective injunctive and declaratory relief."); *Myers v. Cholakis*, No. 08-CV-126, 2008 WL 5147042, at *2 (N.D.N.Y. Dec. 5, 2008) (holding that

---

[22] In his opposition papers, Plaintiff conclusorily asserts that Judge Kettner and Generoso "were not acting in their official capacities as Judge and Court Clerk." (Pl.'s Opp'n to State Defs. 16.) However, each and every one of the factual allegations contained in the Complaint—from processing and producing court records to issuing subpoenas and reviewing evidence—falls squarely within their official duties. *See, e.g.*, *Caldwell v. James*, No. 14-CV-5384, 2015 WL 427980, at *4 (E.D.N.Y. Jan. 30, 2015) ("[T]he challenged conduct—the production, filing, and processing of papers in connection with the underlying criminal prosecution of [the] [p]laintiff in state court—falls squarely within the [d]efendants' official duties.").

any claims against the defendant "in her official capacity as a New York State Judge . . . are barred by the Eleventh Amendment").

In any event, Plaintiff's claims against Judge Kettner and Generoso are also barred by judicial immunity. *See Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) (per curiam) (explaining "that officials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions," which "acts as a complete shield to claims for money damages"); *cf. Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985) (noting that judicial immunity may extend to persons other than a judge "who perform functions closely associated with the judicial process"). Plaintiff's allegations against Judge Kettner stem solely from actions taken while she presided over Plaintiff's prosecution in the City Court, (*see, e.g.*, Compl. 28 (alleging Judge Kettner "allowed the witnesses to lie under oath without reprimand and even considered their perjurous [sic] testimony in her decision"); *id.* (alleging that "[t]hroughout the trial, [Judge Kettner] looked to the [p]rosecutor for answers")), which clearly fall within her judicial capacity, s*ee Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009) ("[T]he Supreme Court has generally concluded that acts arising out of, or related to, individual cases before the judge are considered judicial in nature."); *Karris v. Varulo*, No. 14-CV-1077, 2014 WL 1414483, at *3 (E.D.N.Y. Apr, 10, 2014) (holding that judicial immunity applies to claims "relating to actions taken in [the judge's] judicial capacity during [the] plaintiff's underlying criminal prosecution"). Similarly, Plaintiff's allegations against Generoso—i.e. that he "refused to send the settled transcript and the original record to the Appellate Term," (Compl. 26),— implicate "tasks that are an integral part of the judicial process," *Caldwell*, 2015 WL 427980, at *4 (internal quotation marks omitted); *see also McKnight*, 699 F. Supp. 2d at 525–26 (granting immunity to court clerk for claims arising out of his failure to process the plaintiff's motions, which he did "pursuant to established court

practices"); *Pikulin v. Gonzales*, No. 07-CV-412, 2007 WL 1063353, at *2 (E.D.N.Y. Apr. 5, 2007) (considering the "filing and docketing [of] legal documents" to be "an 'integral part of the judicial process'" that is "therefore shielded from liability by absolute judicial immunity").

In his opposition papers, Plaintiff argues that "[t]he Honorable Judge Susan Kettner left her jurisdiction prior to the trial when she became a co-conspirator . . . ." (Pl.'s Opp'n to City Defs. 24.)  However, while a judge is not immune from actions that, although judicial in nature, are taken in the complete absence of jurisdiction, *see Gross v. Rell*, 585 F.3d 72, 84 (2d Cir. 2009), the scope of a judge's jurisdiction must be construed broadly, *Stump v. Sparkman*, 435 U.S. 349, 356 (1978), such that the judge only "acts in the absence of all jurisdiction when [she] does not have any statutory or constitutional power to adjudicate the case," *Gross*, 585 F.3d at 84 (emphasis and internal quotation marks omitted).  In contrast, "allegations of bad faith or malice," as put forth by Plaintiff here, (*see, e.g.*, Pl.'s Opp'n to State Defs.' Mot. ("Pl's Opp'n to State Defs.") 20 (Dkt. No. 40) (alleging that State "Defendants acted outside of their judicial functions by disregarding [Plaintiff's] civil rights")), "cannot overcome judicial immunity," *Aron v. Becker*, 48 F. Supp. 3d 347, 363 (N.D.N.Y. 2014) (internal quotation marks omitted); *see also Pierson v. Ray*, 386 U.S. 547, 554 (1967) (explaining that judicial immunity "applies even when the judge is accused of acting maliciously and corruptly").

Accordingly, Plaintiff's claims against Judge Kettner and Generoso must be dismissed.

### 5.  Personal Involvement

City Defendants broadly contend that the Complaint should be dismissed for failure to state a claim.  (*See* City Defs.' Mem. 1, 11–12; City Defs.' Reply Mem. in Supp. of Mot. 5–6 (Dkt. No. 44).)  In this regard, "[i]t is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's

personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013); *see also Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks omitted)); *Davila v. Johnson*, No. 15-CV-2665, 2015 WL 8968357, at *4 (S.D.N.Y. Dec. 15, 2015) (noting "that 'personal involvement of [the] defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983'" (some internal quotation marks omitted) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994))). "Conclusory accusations regarding a defendant's personal involvement in the alleged violation, standing alone, are not sufficient . . . ." *Lindsey v. Butler*, 43 F. Supp. 3d 317, 329 (S.D.N.Y. 2014) (internal quotation marks omitted), *reconsideration granted in part on other grounds*, 2014 WL 5757448 (S.D.N.Y. Nov. 5, 2014); *see also George v. City of N.Y.*, No. 12-CV-6365, 2013 WL 5943206, at *6 (S.D.N.Y. Nov. 6, 2013) (holding that "the failure to allege that an individual was personally and directly involved is a fatal defect on the face of the complaint").

In the instant Action, Plaintiff fails to allege adequate facts to demonstrate Strome's or Perone's personal involvement in any purported constitutional violation.[23] The Complaint's sole allegation against Strome is that he "was complacent and allowed the City employees . . . to form this conspiracy and lie under oath." (Compl. 25.) As for Perone, Plaintiff alleges that he "joined the conspiracy . . . ." (*Id.* at 26.) However, "a [§] 1983-based complaint must . . . allege particular *facts* indicating that an individual defendant was personally involved in the deprivation of the plaintiff's constitutional rights; mere 'bald assertions and conclusions of law' do not

---

[23] Because the claims against Giles, Kelly, Murphy, Vacca, Whittemore, Generoso, and Judge Kettner have been dismissed on immunity grounds, the Court addresses the issue of personal involvement as to the remaining individual Defendants only.

suffice." *Davis v. Cty. of Nassau*, 355 F. Supp. 2d 668, 677 (E.D.N.Y. 2005) (quoting *Leeds v.*

*Meltz*, 85 F.3d 51, 53 (2d Cir. 1996)); *see also Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 325

(2d Cir. 2002) ("[C]omplaints containing only conclusory, vague, or general allegations that the

defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are

properly dismissed . . . ." (internal quotation marks omitted)).  Plaintiff, however, simply asserts

that Strome and Perone were involved in a purported conspiracy, without providing any facts

indicating how either was actually involved, let alone facts indicating that a conspiracy existed in

the first place.  Such conclusory pleading is not sufficient to state a claim under § 1983.  *See*

*Richard v. Fischer*, 38 F. Supp. 3d 340, 355–56 (W.D.N.Y. 2014) ("A complaint based upon a

violation of [§] 1983 that does not allege facts establishing the personal involvement of an

individual defendant fails as a matter of law." (internal quotation marks omitted)),

*reconsideration denied sub nom. Richard v. Dignean*, No. 11-CV-6013, — F. Supp. 3d —, 2015

WL 5175758 (W.D.N.Y. Sept. 3, 2015); *cf. Ong v. Park Manor (Middletown Park) Rehab. &*

*Healthcare Ctr.*, 51 F. Supp. 3d 319, 350 (S.D.N.Y. 2014) (dismissing § 1983 claims for lack of

notice required under Rule 8 where the plaintiff offered only "assertion[s] of liability without any

explanation as to [each defendant's] role in harming [him]").  Therefore, Strome and Perone, too,

are entitled to dismissal of the claims brought against them.[24]

---

[24] Along similar lines, Strome and Perone are entitled to the defense of qualified
immunity, as "the facts, viewed in the light most favorable to . . . [P]laintiff," do not "show that
[their] conduct violated a constitutional right."  *Gilles v. Repicky*, 511 F.3d 239, 244 (2d Cir.
2007) (internal quotation marks omitted); *see also Phillips v. Cty. of Orange*, 894 F. Supp. 2d
345, 384–85 (S.D.N.Y. 2012) (same).  Indeed, in the absence of a cognizable federal claim, the
Court finds dismissal warranted on this additional ground.  *See X-Men Sec., Inc. v. Pataki*, 196
F.3d 56, 66 (2d Cir. 1999) ("If the complaint does not allege a cognizable federal claim, the
defendant is entitled to have his qualified-immunity motion granted promptly as a matter of
law.").

### 6.  *Monell*

City Defendants argue that the Complaint fails to satisfy requirements of *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), such that all claims against the City must be dismissed.  (*See* City Defs.' Mem. 20–21.)

A municipal defendant "cannot be held liable under § 1983 on a respondeat superior theory."  *Monell*, 436 U.S. at 691 (italics omitted); *see also Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (reaffirming that "a municipality cannot be held liable on a respondeat superior basis for the tort of its employee" (italics omitted)).  Rather, for a plaintiff to prevail on a § 1983 claim against a municipal employer, he must satisfy the requirements set forth in *Monell* and its progeny, which adhere to the well-settled principle that "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort."  *Monell*, 436 U.S. at 691; *see also Hunter v. City of N.Y.*, 35 F. Supp. 3d 310, 322 (E.D.N.Y. 2014) ("In order to sustain a claim for relief pursuant to § 1983 against a municipal defendant, a plaintiff must show the existence of an official policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right.").

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of N.Y.*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).  In

addition, a plaintiff must establish a causal link between the municipality's policy, custom, or

practice and the alleged constitutional injury.  *See Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d

Cir. 2008) (holding that "a plaintiff must demonstrate that, through its deliberate conduct, the

municipality was the moving force behind the alleged injury" (internal quotation marks

omitted)); *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *12 (S.D.N.Y.

Mar. 26, 2015) ("[T]here must be a direct causal link between a municipal policy or custom and

the alleged constitutional deprivation" (internal quotation marks omitted)); *Johnson v. City of

N.Y.*, No. 06-CV-9426, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (noting that "a plaintiff

must establish a causal connection—an affirmative link—between the [municipal] policy and the

deprivation of his constitutional rights" (internal quotation marks omitted)).

   "Normally, a custom or policy cannot be shown by pointing to a single instance of

unconstitutional conduct by a mere employee of the municipality."  *Tieman*, 2015 WL 1379652,

at *12 (alteration and internal quotation marks omitted); *see also City of Okla. City v. Tuttle*, 471

U.S. 808, 823–24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient

to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by

an existing, unconstitutional municipal policy . . . [that] can be attributed to a municipal

policymaker."); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A

single incident by itself is generally insufficient to establish the affirmative link between the

municipal policy or custom and the alleged unconstitutional violation.").  There are two

circumstances that courts have expressly identified as constituting a municipal policy:  "where

there is an officially promulgated policy as that term is generally understood," and "where a

single act is taken by a municipal employee who, as a matter of [s]tate law, has final

policymaking authority in the area in which the action was taken." *Newton v. City of N.Y.,* 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008). "A municipal 'custom,' on the other hand, need not receive formal approval by the appropriate decisionmaker," *id.*, but nonetheless "may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law," *Kucharczyk v. Westchester Cty.*, 95 F. Supp. 3d 529, 539 (S.D.N.Y. 2015) (internal quotation marks omitted); *see also Tieman*, 2015 WL 1379652, at *16 ("To prevail on this theory of municipal liability, . . . a plaintiff must prove that the custom at issue is permanent and well-settled.").

It is well established that a *Monell* claim cannot lie in the absence of an underlying constitutional violation. *See Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of action . . . it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."); *Stewart v. Schiro*, No. 13-CV-3613, 2015 WL 1854198, at *16 (E.D.N.Y. Apr. 22, 2015) (explaining that where "the [c]ourt has already determined that [the] [p]laintiff failed to demonstrate an underlying constitutional violation . . . , the *Monell* claim necessarily fails"); *Thomas v. Westchester Cty.*, No. 12-CV-6718, 2013 WL 3357171, at *6 (S.D.N.Y. July 3, 2013) ("Absent an underlying constitutional violation, a *Monell* claim cannot lie."). In finding Plaintiff has failed to state a constitutional claim against any individual Defendant, this Court has already determined that the Complaint cannot satisfy this "prerequisite to municipal liability." *Claudio v. Sawyer*, 675 F. Supp. 2d 403, 408 (S.D.N.Y. 2009) ("Under Second Circuit case law, . . . a prerequisite to municipal liability under *Monell* is an underlying constitutional violation by a state actor."), *aff'd*, 409 F. App'x 464 (2d Cir. 2011). Once a "district court properly [finds] no underlying constitutional violation, its decision not to

address the municipal defendants' liability under *Monell* [is] entirely correct."  *Segal*, 459 F.3d at

219; *see also Bolden v. Cty. of Sullivan*, 523 F. App'x 832, 834 (2d Cir. 2013) (summary order)

("[B]ecause the district court properly found no underlying constitutional violation, its decision

not to address the [c]ounty defendants' liability under *Monell* was correct."); *Eskenazi-McGibney*

*v. Connetquot Cent. Sch. Dist.*, 85 F. Supp. 3d 221, 237 (E.D.N.Y. 2015) ("Having concluded

that [the plaintiff] does not state an equal protection cause of action under [§] 1983, the [c]ourt

need not address whether the [defendant] may be liable for any such claim under *Monell* . . . .");

*Lener v. Hempstead Pub. Sch.*, 55 F. Supp. 3d 267, 283 n.14 (E.D.N.Y. 2014) ("[W]hen a

plaintiff lacks any underlying claim of a deprivation of a constitutional right, the claim of

municipal liability on the part of the municipal defendant must be dismissed as well.").

    However, even if any underlying cause of action had survived, Plaintiff has not plausibly

alleged a *Monell* claim against the City, necessitating dismissal on this independent basis as well.

Indeed, the Complaint does not plead the existence of a municipal policy or custom at all.  *See*

*Weiss v. Dep't of Educ.*, No. 09-CV-1689, 2012 WL 1059676, at *12 (S.D.N.Y. Mar. 29, 2012)

(noting that an allegation "of a municipal policy or custom" is "a necessary predicate for

municipal liability under [§] 1983").  The Complaint alleges only that certain municipal

employees violated Plaintiff's constitutional rights by entering his home on November 10, 2012,

(*see* Compl. 19), charging him with violations of the City code, (*see id.* at 27, 29–30), and

participating in the prosecution against him, (*see id.* at 20–28, 30, 32–34).[25]  However, "[a]

*Monell* claim cannot go forward based on conclusory claims regarding a single incident without

_____

    [25] Plaintiff makes this point all the more clear in his opposition papers, where he again
focuses exclusively on the particular circumstances of his case.  (*See, e.g.*, Pl.'s Opp'n to City
Defs. 50 (alleging "the City violated . . . Plaintiff's due process by not providing the files for his
home"); *id.* at 51 ("The City's taking of . . . Plaintiff's property in approving the plans for the
adjacent subdivision violated [his] civil rights . . . .").)

more evidence that connects this incident to a municipal policy or practice." *Pittman v. City of N.Y.*, No. 14-CV-4140, 2014 WL 7399308, at *7 (E.D.N.Y. Dec. 30, 2014); *see also Gordon v. City of N.Y.*, No. 10-CV-5148, 2012 WL 1068023, at *4 (E.D.N.Y. Mar. 29, 2012) (dismissing *Monell* claim where the plaintiff's "allegation is unsupported by anything other than the facts of what occurred in his particular case").  Plaintiff here offers nothing more, as the Complaint is devoid of facts to support an inference of any City policy, practice, or custom—much less one that is unconstitutional.  *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) ("[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy."); *5 Borough Pawn, LLC v. City of N.Y.*, 640 F. Supp. 2d 268, 300 (S.D.N.Y. 2009) (dismissing *Monell* claim where the "plaintiffs fail to allege any facts showing that there is a [c]ity policy—unspoken or otherwise— that violates the Federal Constitution").

Nor does Plaintiff assert the existence of a City policymaker responsible for any unconstitutional policy relevant to the causes of action here.  *See Pignone v. Vill. of Pelham Manor*, No. 10-CV-2589, 2014 WL 929805, at *4 (S.D.N.Y. Mar. 6, 2014) (noting that "[a] plaintiff bears the burden of establishing an official's status as a final policymaker with proof of the official's scope of employment and his role within the municipal or corporate organization"); *cf. Dellutri v. Vill. of Elmsford*, 895 F. Supp. 2d 555, 568 (S.D.N.Y. 2012) ("[The] [p]laintiff only alleges that the inspector and assistant inspector issued a notice of violation.  Without more, this does not demonstrate that these individuals exercised final policymaking authority.").[26]

---

[26] Even assuming, for example, Vacca's status as a policymaker, Plaintiff would need to demonstrate that Vacca "was a policymaker with respect to the particular issue involved here" in order to hold the City liable for his actions.  *Baity v. Kralik*, 51 F. Supp. 3d 414, 437 (S.D.N.Y. 2014) (internal quotation marks omitted).  This Plaintiff cannot do, for the act of issuing citations cannot be said to be a matter of policymaking.  *See Emanuele v. Town of Greenville*, 143 F.

Because Plaintiff has failed to present sufficient facts of any policy or custom, the Court dismisses all claims against the City.

### III. Conclusion

For the reasons stated above, State Defendants' Motion To Dismiss and City Defendants' Motion To Dismiss are granted, without prejudice.

Should Plaintiff choose to file an amended complaint, he must do so within 30 days of this Order, addressing the deficiencies outlined herein. He is advised that an amended complaint replaces the Complaint currently pending before the Court in its entirety and therefore must include all of his claims and factual allegations against all Defendants against whom he wishes to proceed. The amended complaint must be captioned "First Amended Complaint" and bear the same docket number as this Order.

The Clerk of Court is respectfully requested to terminate the pending Motions. (Dkt. Nos. 32, 35.)

SO ORDERED.

DATED:     March **3ɗ** , 2016
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

Supp. 2d 325, 335 (S.D.N.Y. 2001) (noting that town supervisor's act of threatening to issue a citation for alleged building code violations did not constitute policymaking).