UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN DeRAFFELE,

         Plaintiff,

 v.

CITY OF NEW ROCHELLE,

         Defendant.

No. 15-CV-282 (KMK)

OPINION & ORDER

Appearances:

John DeRaffele
New Rochelle, NY
*Pro Se Plaintiff*

Steven C. Stern, Esq.
David A. Gold, Esq.
Sokoloff Stern LLP
Carle Place, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

  John DeRaffele ("Plaintiff"), proceeding pro se, filed this Action pursuant to 42 U.S.C. § 1983, alleging that the City of New Rochelle (the "City" or "Defendant") violated his rights under the First, Fourth, Eighth, and Fourteenth Amendments. (*See* Am. Compl. (Dkt. No. 56).) Before the Court is Defendant's Motion To Dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (*See* Dkt. No. 60.) For the reasons to follow, Defendant's Motion is granted.[1]

---

[1] Plaintiff initially brought this Action against the City, Benny Giles, Douglas Kelly, Brian Murphy, Louis Chipper Perone, Charles Strome, Paul Vacca, Daniel Whittemore, James Generoso, and Judge Susan Kettner, alleging that all defendants violated his constitutional rights under the First, Fourth, Fifth, and Fourteenth Amendments. (*See* Compl. (Dkt. No. 1).) In an Opinion & Order ("Opinion") issued March 30, 2016, the Court granted the City's and former

## I. Background

### A. Factual Background

Plaintiff's Amended Complaint contains an abbreviated factual background as compared to Plaintiff's initial Complaint in this Action. (*Compare* Am. Compl. ¶¶ 4–23, *with* Compl. 5–14.)[2] The following allegations are taken from Plaintiff's Amended Complaint and are assumed true for the purpose of resolving the instant Motion.

In December 1982, Plaintiff purchased the property at 867 Weaver Street, New Rochelle, New York ("867 Weaver Street") as "a pre-existing non-conforming home as dictated by the 1955 zoning ordinance." (Am. Compl. ¶ 2.) Plaintiff avers that "[f]rom 1955 to present, no Certificate of Occupancy has ever been issued for . . . 867 Weaver Street." (*Id.* ¶ 7.) In 2007, the property adjacent to 867 Weaver Street "consist[ed] of 16 acres, two single-family homes, [a] barn, [a] garage[,] . . . [a] commercial building[,] and [a] golf range." (*Id.* ¶ 8.) This land was sold to a developer to build a "26 single family home sub[]division." (*Id.*) Access to this adjacent property was through Plaintiff's driveway and "Plaintiff believed an easement was in effect at the time of his purchase and ended upon the sale of [the] adjacent property in 2007." (*Id.*) Plaintiff "agreed to [a] limited use [by] the developer . . . until [the developer] could put in his own entrance." (*Id.*)

When the work on the adjacent property's driveway was completed, the developer "refused to stop using Plaintiff's driveway as a construction road." (*Id.* ¶ 9.) Plaintiff thus complained to the City Building Inspector, Paul Vacca ("Vacca"), who "refused to take any

---

defendants' motions to dismiss and granted Plaintiff leave to file an Amended Complaint. (*See* Opinion 36 (Dkt. No. 46).) Plaintiff filed the instant Amended Complaint on July 15, 2016, naming only the City as Defendant. (*See* Am. Compl.)

[2] For a fuller recitation of the relevant factual background, see the Court's prior Opinion. (*See* Opinion 2–5.)

2

action against the developer," and therefore "cause[d] the continuation of trespassing of heavy duty trucks and equipment through Plaintiff's property." (*Id.*) Due to the inaction, Plaintiff approached City Manager Charles Strome and Mayor Noam Bramson about the developer's use of his driveway. (*See id.*)

On November 12, 2010, one of Plaintiff's tenants "called the fire department when their carbon monoxide alarm went off." (*Id.* ¶ 10.) Plaintiff contends "[i]t was a simple alarm" to which "one fire truck responded and within minutes the problem was corrected." (*Id.*) However, Plaintiff's tenants were precluded from reentering the home for approximately two hours. (*See id.*) Vacca then arrived on the scene and "went through . . . Plaintiff's house without a search warrant or permission." (*Id.* ¶ 11.) Vacca instructed Plaintiff to come to his office on November 16, 2010. (*See id.*) The following day, Vacca sent an inspector to "inspect the outside of . . . Plaintiff's house and talk to the tenants on the third floor," which Plaintiff contends resulted in "additional tickets under code 111-8." (*Id.* ¶ 12.)

At the November 16, 2010 meeting, Vacca told Plaintiff that "he [could not] find any files for 867 Weaver Street," but that he was "issuing five tickets based on a building card in the City's files." (*Id.* ¶ 13 (internal quotation marks omitted).) Plaintiff continued to seek files pertaining to his property, (*see id.* ¶¶ 13–14), but was ultimately told to file a freedom of information law ("FOIL") request, (*see id.* ¶ 15). On January 15, 2011, Plaintiff met with City Clerk Benny Giles ("Giles") for approximately two hours to review files, after which both Plaintiff and Giles concluded that "no files for 867 Weaver Street existed." (*Id.* ¶ 16.) On February 15, 2011, Plaintiff was informed that files were in fact located and the next day, Plaintiff was given "a brand new folder with several pieces of paper in it." (*Id.* ¶ 18.) Plaintiff

ultimately determined that the files were "bogus," that he had already inspected them, and that Giles "should be ashamed of himself." (*Id.*)

The prosecution against Plaintiff for the housing violations proceeded to trial before Judge Kettner in the City Court of New Rochelle (the "City Court") in May 2012. (*See id*. ¶ 21.) Plaintiff asserts that the trial lasted approximately two years and resulted in a $12,900 fine against Plaintiff. (*See id.* ¶ 22.) Plaintiff paid the fine and immediately appealed the decision. (*See id.* ¶ 23.)

Plaintiff seeks an "order . . . [d]eclaring that Plaintiff's rights were violated under the First, Fourth, Eighth[,] and Fourteenth Amendment[s]," as well as monetary damages in the amount of five million dollars, and punitive damages. (*Id*. at 21–22.)

B.  Procedural History

Plaintiff commenced the instant Action on January 15, 2015. (*See* Dkt. No. 1.) Pursuant to a Scheduling Order adopted by the Court on April 15, 2015, (*see* Dkt. No. 27), the City and former defendants filed two motions to dismiss, which were fully briefed on July 13, 2015, (*see* Dkt. Nos. 32–37, 40, 42, 44–45). In an Opinion & Order ("Opinion") dated March 30, 2016, the Court granted the motions and granted Plaintiff leave to file an Amended Complaint. (*See* Dkt. No. 46.) Plaintiff filed his Amended Complaint on July 15, 2016, asserting claims only against the City. (*See* Dkt. No. 56.) On September 9, 2016, the City filed the instant Motion To Dismiss and accompanying papers, (*see* Dkt. Nos. 60–63), and on September 22, 2016, Plaintiff filed his opposition, (*see* Dkt. No. 64).

On September 30, 2016, Plaintiff filed a Motion to Submit Supplemental Information Requested by the Court, attaching the decision of the Appellate Division in *People v. DeRaffele*, 43 N.Y.S.3d 667 (App. Div. 2016), issued September 20, 2016. (*See* Dkt. No. 65.) In the

decision, the Appellate Division reversed the June 19, 2014 judgment of Judge Kettner, "remit[ed] the matter to the City Court for a new trial before a different judge," and remitted the $12,900 fine. *DeRaffele*, 43 N.Y.S.3d at 671. On November 7, 2016, Defendant filed its papers in reply. (*See* Dkt. Nos. 69–70.) On November 17, 2016, without prior permission of the Court, Plaintiff filed sur-reply papers. (*See* Dkt. Nos. 76–77.) Plaintiff additionally filed a document on February 15, 2017, entitled "Supplemental Information to Court," attaching over 100 pages of exhibits. (*See* Dkt. No. 78.)

## II. Discussion

### A. Standard of Review

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration, citation, and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679

("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In addition, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Further, "[f]or the purpose of resolving [a] motion to dismiss, the [c]ourt . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Hendrix v. City of New York*, No. 12-CV-5011, 2013 WL 6835168, at *2 (E.D.N.Y. Dec. 20, 2013) (same).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted); *see also Farzan v. Wells Fargo Bank, N.A.*, No. 12-CV-1217, 2013 WL 6231615, at *12 (S.D.N.Y. Dec.

2, 2013) (same), *aff'd sub nom. Farzan v. Genesis 10*, 619 F. App'x 15 (2d Cir. 2015). In deciding a motion to dismiss a pro se complaint, it is appropriate to consider certain "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted); *see also Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (noting that a court may consider "factual allegations made by a pro se party in his papers opposing the motion" (italics omitted)). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

B.  Analysis

Plaintiff's Amended Complaint asserts claims only against the City.[3] Plaintiff alleges that Defendant violated his rights under the First, Fourth, Eighth, and Fourteenth Amendments. (*See generally* Am. Compl.)

---

[3] While Plaintiff continues to detail the allegedly wrongful acts of City employees, the "Introduction," "Nature of the Suit," and "Parties" sections of Plaintiff's Amended Complaint make clear that Plaintiff intends only to name the City as Defendant. (*See* Am. Compl. 1 ("Plaintiff . . . brings this suit against the City of New Rochelle . . . ."); *id.* ¶ 1 ("This [A]ction is brought by Plaintiff to seek damages from . . . Defendant from knowingly allowing its employees under the umbrella of the City [to violate Plaintiff's rights]"); *id.* ¶ 2 (describing the Parties as Plaintiff and "[t]he City of New Rochelle[,] consist[ing] of a mayor and five members of [the] city council who guide the [C]ity").)

7

1. First Amendment

Plaintiff asserts that "his [c]ivil [r]ights under the First Amendment [were] violated because . . . Plaintiff could never petition the [C]ity . . . for redress after experiencing the conspiracy that took place . . . from . . . November 12, 2010 . . . until the trial ended on June 12, 2014." (*Id.* ¶ 25.) Plaintiff questions how he could "ever trust the fire department, police department, building department or court system in the [C]ity of New Rochelle after being treated in this manner." (*Id.*) Plaintiff further avers that his First Amendment rights were violated by the City "through its employees" because they were "aware of what was going on and took no action to stop it." (*Id.*) In response, Defendant contends that "Plaintiff pleads no facts demonstrating the City or its employees interfered with his right to petition the government." (Mem. of Law in Supp. of Def.'s Mot. To Dismiss ("Def.'s Mem.") 10 (Dkt. No. 61).)

"[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances." *Bill Johnson's Rests., Inc. v. N.L.R.B.*, 461 U.S. 731, 741 (1983); *see also Hamilton v. Fischer*, No. 12-CV-6449, 2015 WL 8207439, at *2 (W.D.N.Y. Dec. 7, 2015) ("The Supreme Court has 'made explicit that the [First Amendment] right to petition extends to all departments of the Government, and that the right of access to the courts is but one aspect of the right of petition.'" (alterations and some internal quotation marks omitted) (quoting *BE & K Constr. Co. v. N.L.R.B.*, 536 U.S. 516, 525 (2002))). Plaintiff was afforded a full trial before Judge Kettner. To the extent Plaintiff was displeased with the outcome of that trial, he had—and took advantage of—the right to appeal the decision. Indeed, Plaintiff recently succeeded on appeal, was awarded a new trial before a different City Court judge, and the fines were remitted. *See DeRaffele*, 43 N.Y.S.3d at 671. Moreover, any claim that Plaintiff was

deprived of his right to petition the government for redress is belied by the fact of the filing of this Action.

The crux of Plaintiff's right-to-petition claim appears to be a claim for retaliatory prosecution under the First Amendment. (*See* Am. Compl. ¶ 25 ("Vacca sought revenge against . . . Plaintiff for his complaints sent to . . . Vacca's boss, the City Manager, Mr. Charles Strome and Mayor Noam Bramson regarding the mishandling of Plaintiff's complaints regarding his driveway.").) As noted in the Court's prior Opinion, this claim is barred by the statute of limitations. (*See* Opinion 18 n.14 ("[S]uch a cause of action would have accrued on November 16, 2010 when the citations were issued . . . [and] that claim would have expired three years later on November 16, 2013, long before the commencement of the instant Action." (citations omitted)).) Plaintiff has provided no additional information to justify the tolling of the statute of limitations. Accordingly, Plaintiff's claims under the First Amendment are dismissed.

### 2. Fourth Amendment

In its prior Opinion, the Court found that "Plaintiff's Fourth Amendment claim clearly accrued on November 12, 2010, the date on which the allegedly illegal search and entry occurred," and therefore was "time-barred unless there [was] a basis for tolling of the statute of limitations." (Opinion 19 (citation omitted).) Equitable tolling of the statute of limitations is applied "only in 'rare and exceptional circumstances,' where . . . 'extraordinary circumstances' prevented a party from timely performing a required act, and the party 'acted with reasonable diligence throughout the period he sought to toll.'" *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005) (alteration omitted) (quoting *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004)). Among these circumstances are "[f]raudulent or deceptive acts on the part of [the] defendants . . . , but only to the extent that the fraud concealed the existence of [the] plaintiff's cause of

9

action and only for as long as the fraud or deception actually prevented the plaintiff from knowing or having reason to know that he has been injured." *Verdon v. Consol. Rail Corp.*, 828 F. Supp. 1129, 1140 (S.D.N.Y. 1993).

In his Amended Complaint, Plaintiff provides no facts warranting tolling of the limitations period, but rather reiterates the allegations that "Vacca entered [Plaintiff's] home without probable cause or a search warrant." (Am. Compl. ¶ 27.) As the Court previously noted, "Plaintiff does not allege any [facts suggesting fraud concealed the existence of Plaintiff's claims] and, to the contrary, suggests that he knew of the purported violations at the time they occurred." (Opinion 20.) Indeed, Plaintiff acknowledges that he was present at the time of the search and entry, (*see* Am. Compl. ¶ 11), and thus, it is clear that on November 12, 2010, he knew "of the injur[ies] which [are] the basis of his [A]ction," *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) (internal quotation marks omitted); *accord Hueber v. McCune*, No. 14-CV-49, 2014 WL 2047763, at *4 (W.D.N.Y. May 19, 2014) ("In the context of an allegedly illegal entry into an individual's home, the plaintiff's claim accrues when the plaintiff knows or should have known that the entry occurred."), *aff'd*, 589 F. App'x 9 (2d Cir. 2014). Therefore, for the reasons stated in the Court's prior Opinion, Plaintiff's Fourth Amendment claims are dismissed. (*See generally* Opinion 19–21.)

### 3. Eighth Amendment

In his Amended Complaint, Plaintiff newly asserts that the City violated his rights under the Eighth Amendment when it "levied excessive fines of $12,900 for five violations against . . . Plaintiff." (Am. Compl. ¶ 29.) The Court agrees with Defendant that Plaintiff's Eighth Amendment claim is moot. (*See* Reply Mem. of Law in Further Supp. of Def.'s Mot. To Dismiss 8 (Dkt. No. 70).)

As noted, the Appellate Division reversed the conviction of Plaintiff, ordered a new trial, and ordered remittance of any fines Plaintiff paid. *See DeRaffele*, 43 N.Y.S.3d at 671. "A case becomes moot . . . when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 815 F.3d 105, 109 (2d Cir. 2016) (internal quotation marks omitted). Whether excessive or not, Plaintiff has been returned the $12,900. Thus, the relief Plaintiff seeks is now moot and accordingly, his Eighth Amendment claim is dismissed. *See, e.g.*, *Air Espana v. Brien*, 165 F.3d 148, 153 (2d Cir. 1999) (finding that the plaintiff's claims as to "fines that were canceled . . . are moot").

4. Fourteenth Amendment

In the Amended Complaint, Plaintiff identifies 10 ways in which his "rights under the Fourteenth Amendment were violated." (Am. Compl. ¶ 31.) These alleged violations include: (1) the City Court's "grant[ing of] the Motion in Limine"; (2) "[t]he conspiracy that was formed by . . . Vacca and included numerous department heads that lied under oath to protect . . . Vacca's false testimony and evidence"; (3) "[t]he filing of false documents during the trial"; (4) "[t]he delay of the trial[,] violating Plaintiff's right to a speedy trial"; (5) "[t]he [City Court] sustaining . . . the Prosecutor['s] (hundreds) of objections in order to prevent the truth from being revealed"; (6) the City Court's "[r]efusal to have [the government's] witness declared a hostile witness"; (7) the City Court's "[r]efusal to grant a mistrial"; (8) the City Court's "refus[al] to acknowledge judicial review of laws"; (9) the City Court's "refus[al] to acknowledge the truthful testimony of Plaintiff's witnesses"; and (10) the City Court's "changing the [b]urden of [p]roof." (*Id.*) In his opposition to Defendant's Motion, Plaintiff also argues that the "due process claim stems from the fact that the City did not allow a notice to cure prior to writing the five tickets." (Reply in Opp'n to Mem. in Supp. of Mot. To Dismiss ("Pl.'s Opp'n") 26 (Dkt. No. 64).)

11

Each of Plaintiff's claims involves conduct effected by former defendants Judge Kettner and prosecutor Murphy, with the exception of the second claim, alleging the existence of a conspiracy between former defendants Vacca, Whittemore, Kelly, Murphy, and Judge Kettner. As detailed in the Court's prior Opinion, such individuals have judicial, prosecutorial, and testimonial immunity, (*see generally* Opinion 21–28), and as explained in the Court's prior Opinion and *infra*, the City cannot be held liable for the conduct of these employees.[4] Moreover, to the extent these claims involve alleged irregularities during the trial, they could be and, in fact, were addressed on appeal by the Appellate Division.

### 5. *Monell*

Defendant contends that Plaintiff has failed to state a claim pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), as "[P]laintiff suffered no violation of his constitutional rights." (Def.'s Mem. 17.) Additionally, Defendant argues that "[t]here are no factual allegations that the alleged wrongful conduct took place pursuant to some municipal policy, practice, or custom," and "[P]laintiff does not allege that any final policymaking official took action against him." (*Id.*)

In its prior Opinion, the Court found that because "Plaintiff ha[d] failed to state a constitutional claim against any individual Defendant, . . . the Complaint [could not] satisfy th[e] prerequisite to municipal liability." (Opinion 33 (internal quotation marks omitted).) Moreover, the Court held that "even if any underlying cause of action had survived, Plaintiff ha[d] not

---

[4] For the reasons stated in the Court's March 2016 Opinion, Plaintiff's allegations that "[t]he delay of the trial violat[ed] [his] right to a speedy trial," (Am. Compl. ¶ 31), are dismissed, (*see* Opinion 10 n.5 ("Sixth Amendment protections did not apply to Plaintiff's prosecution in the City Court.")).

12

plausibly alleged a *Monell* claim against the City, necessitating dismissal on this independent basis as well." (*Id.* at 34.)[5]

Plaintiff has failed to cure the deficiencies identified in his initial Complaint. Plaintiff's Amended Complaint still "does not plead the existence of a municipal policy or custom at all," (*id.*), but rather realleges the existence of a conspiracy in which the City "knowingly allow[ed] its employees . . . to falsely charge Plaintiff with [five] violations, . . . enlist[ed] other department heads to lie and present false reports against Plaintiff . . . , [and] enlisted the help of . . . Judge . . . Kettner[] to ensure a victory on [the City's] behalf," (Am. Compl. ¶ 1).

It is well established that a *Monell* claim cannot lie in the absence of an underlying constitutional violation. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of action . . . ; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."); *Stewart v. Schiro*, No. 13-CV-3613, 2015 WL 1854198, at *16 (E.D.N.Y. Apr. 22, 2015) (explaining that where "the [c]ourt has already determined that [the] [p]laintiff failed to demonstrate an underlying constitutional violation . . . . , the *Monell* claim necessarily fails"); *Thomas v. Westchester County*, No. 12-CV-6718, 2013 WL 3357171, at *6 (S.D.N.Y. July 3, 2013) ("Absent an underlying constitutional violation, a *Monell* claim cannot lie."). As detailed *supra*, Plaintiff has failed to allege a constitutional violation pursuant to the First, Fourth, Eighth, or Fourteenth Amendments. *See Claudio v. Sawyer*, 675 F. Supp. 2d 403, 408 (S.D.N.Y. 2009) ("Under Second Circuit case law, . . . a prerequisite to municipal liability under *Monell* is an underlying constitutional violation by

---

[5] As the Court's prior Opinion provides an overview of the legal landscape regarding municipal liability under § 1983, the Court does not reiterate the relevant case law here. (*See generally* Opinion 31–35.)

a state actor."), *aff'd*, 409 F. App'x 464 (2d Cir. 2011). Once a "district court properly [finds] no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* [is] entirely correct." *Segal*, 459 F.3d at 219; *see also Bolden v. County of Sullivan*, 523 F. App'x 832, 834 (2d Cir. 2013) (summary order) ("[B]ecause the district court properly found no underlying constitutional violation, its decision not to address the [c]ounty defendants' liability under *Monell* was correct."); *Lener v. Hempstead Pub. Sch.*, 55 F. Supp. 3d 267, 283 n.14 (E.D.N.Y. 2014) ("[W]hen a plaintiff lacks any underlying claim of a deprivation of a constitutional right, the claim of municipal liability on the part of the municipal defendant must be dismissed as well.").

In his opposition to Defendant's Motion, Plaintiff—for the first time—contends that "[t]he conspiracy was a common practice of the City of New Rochelle" and that "Vacca . . . [and a] task force le[]d by Mr. Joseph Girardi . . . would go through every house in [W]est New Rochelle, enter the premises without a search warrant and then ticket the owner for illegal multi-families when in fact these houses were legal non-conforming pre-existing multi-family houses." (Pl.'s Opp'n 29–30.)[6] Under *Monell*, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law," *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997), which is to say, that it is a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity," *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989); *see also Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (noting that a municipality's custom "need not be memorialized in a specific rule or regulation"). Therefore, a plaintiff may establish municipal

---

[6] It is well established that the Court may consider "factual allegations made by a pro se party in his papers opposing the motion." *Walker*, 717 F.3d at 122 n.1 (italics omitted).

14

liability by demonstrating that a municipality "indirectly caused the misconduct of a subordinate municipal employee by acquiescing in a longstanding practice or custom which may fairly be said to represent official policy." *Miller v. County of Nassau*, 467 F. Supp. 2d 308, 314 (E.D.N.Y. 2006). To prevail on this theory of municipal liability, however, a plaintiff must prove that the custom at issue is permanent and well settled. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (noting that the Supreme Court "has long recognized that a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage with the force of law'" (some internal quotation marks omitted) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970)). As the Supreme Court emphasized in *Monell*, Congress enacted § 1983 to impose liability on municipalities "because of the persistent and widespread discriminatory practices of state officials," and out of recognition that such practices could become "so permanent and well settled as to constitute a 'custom or usage' with the force of law." 436 U.S. at 691 (some internal quotation marks omitted).

Here, Plaintiff's single conclusory statement in his opposition that "the conspiracy was a common practice" is not sufficient to state a claim for *Monell* liability under § 1983. *See Gordon v. City of New York*, No. 10-CV-5148, 2012 WL 1068023, at *4 (E.D.N.Y. Mar. 29, 2012) ("[M]ere conclusory references to a policy or custom, with no supporting facts, will not suffice to state a claim of § 1983 municipal liability."); *see also Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 124 (2d Cir. 1991) ("[O]ur prior cases suggest that an allegation of municipal policy or custom would be insufficient if wholly conclusory."); *5 Borough Pawn, LLC v. City of New York*, 640 F. Supp. 2d 268, 299 (S.D.N.Y. 2009) (dismissing *Monell* claim because the plaintiffs' "assertion that the [c]ity ha[d] an unconstitutional policy [was] based on nothing more than their

15

unsupported supposition"). The alleged "practice" of visiting "every house in [W]est New Rochelle," conducting purportedly warrantless searches, and ticketing owners for "legal non-conforming" uses, (Pl.'s Opp'n 30), does not rise to the type of "permanent, or close to permanent" practice which can trigger *Monell* liability, *Davis v. City of New York*, 228 F. Supp. 2d 327, 346 (S.D.N.Y. 2002), *aff'd*, 75 F. App'x 827 (2d Cir. 2003) (explaining that "[w]idespread means that [the unconstitutional acts in question] are common or prevalent throughout the [government body]; well-settled means that the [unconstitutional acts in question] have achieved permanent, or close to permanent, status").

Furthermore, Plaintiff has not sufficiently alleged that a City policymaker was responsible for the alleged unconstitutional practice. *See Pignone v. Village of Pelham Manor*, No. 10-CV-2589, 2014 WL 929805, at *4 (S.D.N.Y. Mar. 6, 2014) (noting that "[a] plaintiff bears the burden of establishing an official's status as a final policymaker with proof of the official's scope of employment and his role within the municipal or corporate organization"); *cf. Dellutri v. Village of Elmsford*, 895 F. Supp. 2d 555, 568 (S.D.N.Y. 2012) ("[The] [p]laintiff only alleges that the inspector and assistant inspector issued a notice of violation. Without more, this does not demonstrate that these individuals exercised final policymaking authority."). Indeed, even if the Court were to assume that either Vacca or Joseph Girardi were policymakers for the City, Plaintiff would need to demonstrate that they were "policymaker[s] with respect to the particular issue involved here" in order to hold the City liable for their actions. *Baity v. Kralik*, 51 F. Supp. 3d 414, 437 (S.D.N.Y. 2014) (internal quotation marks omitted). As the Court noted in its prior Opinion, Plaintiff is unable to do so, as "'the act of issuing citations cannot be said to be a matter of policymaking.'" (*See* Opinion 35–36 n.26 (quoting *Emanuele v. Town of Greenville*, 143 F. Supp. 2d 325, 335 (S.D.N.Y. 2001)).)

To the extent Plaintiff's opposition identifies City Manager Strome as a policymaker because he "became aware of the conspiracy and did nothing to stop it and gave his formal approval," (Pl.'s Opp'n 30), Plaintiff offers no factual support for this boilerplate assertion. In any event, as noted above, Plaintiff's failure to establish "any underlying claim of a deprivation of a constitutional right" requires that his "claim of municipal liability on the part of the [City] . . . be dismissed." *Lener*, 55 F. Supp. 3d at 283 n.14. In the absence of sufficient facts to establish municipal liability, the Court dismisses all claims against the City.

### III. Conclusion

In light of the foregoing analysis, the Court grants Defendant's Motion To Dismiss Plaintiff's Amended Complaint.

Because Plaintiff has already amended his Complaint in response to a decision on the merits of his claims, but has still failed to state a claim, the Amended Complaint is dismissed with prejudice. *See Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around"); *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016) (granting motion to dismiss with prejudice where "[the] [p]laintiff has already had two bites at the apple, and they have proven fruitless" (alteration and internal quotation marks omitted)).

The Clerk of Court is respectfully requested to terminate the pending Motion, (*see* Dkt. No. 60), and close this case.

SO ORDERED.

DATED: June 13, 2017
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

17